UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


DANA E. YOUNG, SR.,                  :
                                     :
            Plaintiff                :
                                     :   NO. 3:CV-05-2452
       -vs-                          :
                                     :   (Judge Kosik)
                                     :
DENNIS J. KAZMERSKI, D.D.S.,         :
ROBERT S. MOCZULSKI, D.D.S.,         :
                                     :
            Defendants               :


**MEMORANDUM**

   Dana E. Young, Sr., a prisoner confined at the State Correctional Institution at Frackville, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 25, 2005. Named as defendants were Dennis J. Kazmerski, D.D.S., and Robert S. Moczulski, D.D.S., dentists employed at the State Correctional Institution at Mahanoy. Along with his complaint, plaintiff filed an application to proceed <u>*in forma pauperis*</u>.[1] On April 14, 2006, defendants filed an answer to the complaint raising affirmative defenses.

   On August 16, 2006, the defendants filed a motion for summary judgment and supporting documents. A brief in support of the

---

[1] Plaintiff completed this court's form application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account. The court then issued an Administrative Order directing the Warden to commence deducting the full filing fee from plaintiff's prison trust fund account.

motion was also filed.  On October 4, 2006, plaintiff filed a brief in opposition to the motion for summary judgment.  The matter is now ripe for disposition.

## **Background**

In his complaint, plaintiff asserts that he had seven (7) teeth extracted while he was an inmate at SCI-Mahanoy.  The first tooth, which broke on June 26, 2004, was checked by defendant Kazmerski at dental sick call on June 28, 2004.  It was extracted on July 2, 2004.  Three bottom teeth were extracted on July 29, 2004.  Three top teeth were extracted on September 27, 2004.  Plaintiff asserts he was left with only six (6) bottom front teeth and no top teeth.  On November 17, 2004, plaintiff informed defendant Kazmerski that the six bottom teeth were cutting into his top gum when he tried to eat and sleep.  Defendant Kazmerski took plaintiff's name and number and told him to check the call out the week after Thanksgiving and he would get plaintiff in for impressions.  Plaintiff was not taken in for impressions.  Plaintiff spoke with defendant Kazmerski on December 17, 2004 and was told he would check on it.  On December 22, 2004, plaintiff signed up for dental sick call and was told by the nurse and defendant Moczulski to sign up the next day because defendant Kazmerski was not in.

On December 23, 2004, plaintiff signed up for dental sick call and was told by defendant Moczulski that he had to wait because they had more serious patients.  On January 24, 2005, plaintiff submitted a request for dentures, explaining that his lower teeth

-2-

were cutting into his top gum when he tried to chew. Plaintiff received a response the next day from defendant Moczulski acknowledging plaintiff's complaint as legitimate and informing plaintiff that he was placing him on his schedule for denture construction and to watch the call out for his first appointment in a few weeks. On March 28, 2005, plaintiff submitted a second request seeking immediate attention. In a response dated March 28, 2005, defendant Moczulski stated that immediate attention was given immediate problems like emergencies and that plaintiff would be seen in April.

On April 22, 2005, impressions were taken of plaintiff by defendant Moczulski. A second set of impressions were taken by defendant Moczulski on May 20, 2005. A fitting was conducted by defendant Moczulski on July 6, 2005. On August 12, 2005, plaintiff received his dentures. Plaintiff asserts that the actions of defendant as set forth above constitute deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

### **Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. The substantive law determines which facts are material. Id. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)(citing First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968)). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true'." Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 512 (3d Cir. 1994)(citing Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998).

The moving party bears the initial responsibility of stating the basis for its motion, identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As a general rule, unsubstantiated arguments made in briefs are not considered

evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). The moving party must present competent evidence to support his version of events. Likewise, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The nonmoving party cannot "simply reassert factually unsupported allegations contained in [the] pleadings." Williams, 891 F.2d at 460 (citing Celotex, 477 U.S. at 325). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the nonmoving party ... 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file'." Pastore, 24 F.3d at 511 (citing Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)). If the evidence in favor of the nonmoving party is merely colorable or not significantly probative, summary judgment should be granted. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)(citing Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

## **Discussion**

In support of their motion for summary judgment, defendants submitted a brief, statement of material facts and evidentiary materials. In reviewing the documents submitted by defendants, we note that defendants do not dispute the allegations as set forth in

plaintiff's complaint. Rather, defendants have incorporated plaintiff's factual allegations into their evidentiary materials and add additional information. The defendants' statement of material facts[2], which is supported by the affidavits of defendant Kazmerski[3] and defendant Moczulski[4], as well as plaintiff's medical and dental records[5], establish the following additional information.

While SCI-Mahanoy was originally built to house 1,900 inmates, its actual population is several hundred inmates in excess of that number. Defendant Kazmerski and Defendant Moczulski are the only dentists employed full time at SCI-Mahanoy. Defendants point out that when an inmate initially requires dental care at SCI-Mahanoy, he is seen by the first available dentist. The inmate is then permanently assigned to that dentist. The inmate will normally be treated by the assigned dentist, but will be seen by the other staff dentist in emergency or other extraordinary circumstances. The plaintiff came under defendant Kazmerski's care on February 5, 1999. Since that date, defendant Kazmerski has been plaintiff's primary dental care physician.

---

[2]*See*, Document 17, Defendants' Statement of Material Facts in Support of their Motion for Summary Judgment.

[3]*See*, Document 17, Exhibit A.

[4]*See*, Document 17, Exhibit B.

[5]*See*, Document 17, Exhibits C-P.

Defendants state that a large majority of inmates, including plaintiff, had significant dental problems when they arrived at SCI-Mahanoy.[6]

All parties agree that on June 26, 2004, plaintiff broke a tooth. The plaintiff's broken tooth was, pursuant to protocol, classified as Level 4, requiring emergency care. On June 28, 2004, plaintiff was examined by defendant Kazmerski. Defendant Kazmerski

---

[6]Defendants submitted documentation that dental care at the prison is provided on the basis of dental protocols which classify the severity of the condition:

(a) The most severe conditions are referred to as emergency care. "Dental Level 4 - Emergency care includes treatment for: 1) cessation of hemorrhage; 2) relief of severe pain; 3) oral infections; 4) fractures of the maxilla, mandible, alveoli; natural teeth (or referral for treatment); 5) other trauma to the oral cavity; or 6) any other condition, symptomatic or asymptomatic, that poses an immediate threat to the health of the inmate."

(b) The next level of severity is referred to as urgent care. "Dental Level 3 - Urgent care includes treatment for conditions that require prompt intervention to avoid progression to an emergency condition. Such conditions may be symptomatic or asymptomatic and include: 1) advanced caries; 2) severe periodontal disease; 3) pulpal and periapical infections and lesions; 4) soft tissue lesions; 5) prosthetic repairs where masticatory ability is seriously compromised; and 6) any other condition that has the short term potential to become an emergency or an acute problem if left untreated."

(c) The next level of severity is referred to as intermediate care. "Dental Level 2 - Intermediate care includes treatment for: 1) incipient to moderate caries; 2) routine restorations; 3)asymptomatic fractured natural teeth. (These may be long-standing fractures not of an urgent nature.); 4) gingivitis; 5) moderate periodontal disease; 6) missing teeth requiring replacement with removable dental prosthesis; 7) non-urgent prosthetic repairs; and 8) any other observed condition that does not rise to a Dental Level 3 or Dental 4 designation."

(d) The lowest level of care is "Dental Level 1 - Preventive Care." (*See*, Document 17, Exhibit N).

found that plaintiff had broken tooth #11, which held his partial upper plate in place.  Defendant Kazmerski recommended that the best course of treatment for plaintiff was the extraction of tooth #11 and his remaining upper teeth so that he could be provided with a full upper set of dentures.  Defendant Kazmerski also recommended to plaintiff that his teeth numbers 20, 29 and 32 be extracted and replaced with dentures because of periodontal disease.  On July 2, 2004, plaintiff signed a Consent to Operation or Other Medical/Dental Procedure, which is a standard form every inmate is required to execute before any surgical medical procedure is performed.  Immediately thereafter, Defendant Kazmerski extracted plaintiff's tooth #11.  Five days later, on July 7, 2004, plaintiff was seen by the Medical Department.  He did not voice any complaints or problems resulting from the extraction performed on July 2, 2004.  On July 29, 2004, plaintiff signed a Consent to Operation or Other Medical/Dental Procedure authorizing the extraction of three teeth, numbers 20, 29 and 32.  At that time, defendant Kazmerski extracted plaintiff's three teeth.  Plaintiff was then given a three day prescription for Motrin to alleviate any pain or discomfort resulting from the extractions.

On September 24, 2004, plaintiff requested the extraction of his upper teeth and that he be provided with dentures.  On September 27, 2004, plaintiff signed a Consent to Operation or Other Medical/Dental Procedure.  On that date, defendant Kazmerski extracted plaintiff's teeth numbers 2, 6 and 12.  Plaintiff was

given a three day prescription for Motrin to alleviate any pain or discomfort resulting from the extractions.

Defendants note that following the extraction of teeth, there is typically a six to eight week waiting period to allow the patient's mouth to heal before the initial impressions for dentures are taken. Thereafter, there is typically a five to six month period before the inmate receives his final set of dentures. During this time further impressions and molds are made and fittings are done. Defendants also note that pursuant to protocol, replacing missing teeth with removable dental prosthesis is a priority Level 2.

On November 17, 2004, while he was at medical sick call, plaintiff approached defendant Kazmerski and told him that when he tried to eat or sleep, his six remaining lower teeth cut into his top gum. Defendant Kazmerski instructed plaintiff to check the medical call out list the week after Thanksgiving and he would arrange for impressions of plaintiff's mouth to be taken before he left for military duty.[7] However, defendant Kazmerski did not begin the process of fitting plaintiff for new dentures before he left for military duty because: it became clear to him that the fitting process could not be completed in the time available; there was nothing about plaintiff's condition that would elevate the procedure from a Level 2 to a Level 3 or 4; plaintiff's lack of

---

[7] We note that while in the process of treating plaintiff, defendant Kazmerski was notified that he was being called to active military duty. He reported for military duty on January 21, 2005 and returned to work on May 20, 2005.

dental prosthesis did not pose any threat to his health for the expected period of his deployment; and, in his absence, defendant Moczulski would be the only primary care dentist available at SCI-Mahoney.

On December 22, 2004, plaintiff signed up for dental sick call and was told to sign up the following day because defendant Kazmerski was not in that day. On the following day, December 23, 2004, plaintiff signed up for dental sick call.  On that date, defendant Moczulski informed plaintiff his treatment would be delayed because he had to treat other inmates with more serious problems.

On January 24, 2005, plaintiff submitted an Inmate Request to Staff Form to the dental department asserting that his teeth were cutting into his top gum when he ate and requesting dentures.  On January 25, 2005, defendant Moczulski received plaintiff's dental records and radiographs, and responded to plaintiff's Inmate Request to Staff Form.  Defendant Moczulski informed plaintiff that he was placing him on his schedule for denture construction, and he should watch the call out for your first appointment in a few weeks.

On March 28, 2005, plaintiff sent an Inmate Request to Staff Form stating that his difficulties continued and requesting an immediate appointment to be fitted for dentures.  On the same day, defendant Moczulski responded to plaintiff's Inmate Request to Staff, explaining that immediate attention is given to emergencies and telling plaintiff he would see him in April, but he should be

aware that by policy, denture construction is secondary to infection in dental treatment.

On April 22, 2005, initial impressions were taken to begin construction of full upper and partial lower dentures for plaintiff. On May 20, 2005, second impressions were taken for the construction of plaintiff's dentures. On July 6, 2005, defendant Moczulski performed a preliminary fitting of plaintiff's dentures. The fitting included taking a bite registration, checking the shade of the dentures, and recording the midline. On July 15, 2005, a trial insertion of the teeth was done in wax. On August 12, 2005, a set of full upper and partial lower dentures were delivered to plaintiff.

Defendants assert that when teeth are extracted, the inmate is instructed that if he experiences any significant pain or other problems, he may request a soft food diet. They note that there is no record that plaintiff ever requested a soft food diet during the events complained of in this action. Moreover, defendants submit evidence that plaintiff's weight remained fairly constant during this time period. Finally, defendants Kazmerski and Moczulski both opined that in their considered medical opinions, during this series of events, plaintiff was never in any medical danger by reason of his not having dentures.

In his brief in opposition to the defendants' motion for summary judgment, plaintiff argues that there is a genuine issue of material fact as to whether the defendant dentists were deliberately indifferent to plaintiff's serious medical needs.

Plaintiff asserts that he informed both defendants that his six bottom teeth cut into his top gum when he tried to eat and sleep, and that they failed to take any action.  Plaintiff argues that for eleven months, he was suffering from cut gums without dentures and that he was eating mainly oatmeal and Roman soups, which he asserts had an effect on his health.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." _Rouse v. Plantier_, 182 F.3d 192, 197 (3d Cir. 1999)(citing _Estelle v. Gamble_, 429 U.S. 97 (1976)).  To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) to evidence deliberate indifference to a serious medical need.  _See_, _Spruill v. Gillis_, 372 F.3d 218, 235 (3d Cir. 2004); _Natale v. Camden County Corr. Facility_, 318 F.3d 575, 582 (3d Cir. 2003).  The inmate must satisfy this two-part, conjunctive test.  Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference.  _See_, _Farmer v. Brennan_, 511 U.S. 825, 837-38 (1994).

In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed.  _Estelle v. Gamble_, 429 U.S. 97, 104-05 (1976).  To be deliberately indifferent, a prison official must

know of, and disregard, an excessive risk to inmate health or safety. *Farmer, supra*, 511 U.S. at 837-38 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle*, 429 U.S. at 106. It also follows that an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69.

In reviewing the instant record, we do not believe that plaintiff has established an Eighth Amendment violation against the defendants. While we question whether the failure to provide dentures was sufficient to rise to the level of a serious medical need, we do not find that the record establishes that the defendant dentists exhibited deliberate indifference to plaintiff's needs. The record reflects that plaintiff was seen by one of the defendant dentists after each request. Plaintiff was also provided with a reason for the delay, mainly that the fitting for dentures was not given emergency status under prison protocol. While there was a delay in providing plaintiff with dentures[8], we do not believe that the record establishes that the defendant dentists disregarded an excessive risk to plaintiff's health or safety. The record reflects that plaintiff did not request a soft food diet during this period, nor did he experience significant weight loss.

---

[8] The record shows and the parties agree that plaintiff first complained to defendant Kazmerski that his bottom teeth were cutting into his top gum on November 17, 2004. Defendant Moczulski began taking initial impressions for plaintiff's dentures on April 22, 2005.

Moreover, both defendants opined that in their medical opinions plaintiff was never in any medical danger by reason of his not having dentures. Thus, we find, based on the instant record, that plaintiff fails to establish that the defendant dentists were deliberately indifferent to a serious medical need. Accordingly, we will grant defendants' motion for summary judgment. An appropriate order will follow.

```
                    UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF PENNSYLVANIA


DANA E. YOUNG, SR.,              :
                                 :
            Plaintiff            :
                                 :   NO. 3:CV-05-2452
       -vs-                      :
                                 :   (Judge Kosik)
                                 :
DENNIS J. KAZMERSKI, D.D.S.,     :
ROBERT S. MOCZULSKI, D.D.S.,     :
                                 :
            Defendants           :
```

## **ORDER**

NOW, THIS 23rd DAY OF MARCH, 2007, IT IS HEREBY ORDERED THAT:

(1) The defendants' motion for summary judgment (Document 17) is **GRANTED**;

(2) Judgment is hereby entered in favor of the defendants and against the plaintiff; and,

(3) The Clerk of Court is directed to **CLOSE** this case.

                              s/Edwin M. Kosik
                              United States District Judge